FORD *v.* WILSON & COMPANY.

| | |
|---|---|
| 85 | 109 |
| 91 | 652 |
| 85 | 109 |
| 105 | 837 |
| 85 | 109 |
| 106 | 91 |
| 85 | 109 |
| f125 | 340 |

1. Want of title in the defendant to the premises on which the lien is claimed, and alleged title in a third person who is no party to the suit, will not bar an action for foreclosing and enforcing the statutory lien of a material-man

2. It is not required that the claim of lien as recorded should show on its face that the material-man has complied with his contract; nor is it required that such claim shall allege ownership of the house and premises more distinctly than that they are the house and premises of the person named.

3. No implied waiver of a material-man's statutory lien results from the acceptance of the promissory note of a third person as collateral security. The statute giving the lien is silent as to other security.

4. To compare the verdict with the evidence, a motion for a new trial is indispensable.

April 14, 1890.

Actions. Liens. Title. Contracts. Waiver. Promissory notes. Practice. Before Judge MARSHALL J. CLARKE. Fulton superior court. September term, 1889.

On September 9, 1884, Wilson & Co. sued Mrs. Eugenia C. Ford on an account for $464.20, besides interest from Feb. 9, 1884, for material furnished to her for the improvement of her real estate on Pine street in Atlanta. They alleged that they claimed a materialman's lien upon said real estate for the sum mentioned, because they furnished the material for its improvement, and the material was used for that purpose by Mrs. Ford; that they had fully complied with the contract for furnishing it, the furnishing being finished Feb. 9, 1884, and payment being due that day; and that they recorded their claim of lien on April 10, 1884, a copy of which was attached to the declaration, which sum defendant, on demand, refused to pay. They prayed that their lien might be declared upon the real estate and be foreclosed, and for process.

Mrs. Ford pleaded that, before buying or receiving any of the lumber, she transferred to plaintiffs, expressly to pay for the lumber, two notes on Mrs. S. J. Handy, describing them, and they were to hold and collect the notes as they fell due, pay themselves and turn the balance, if any, over to defendant; that under this arrangement she bought of plaintiffs in October, November and up to Dec. 28, 1883, material to the amount of $460, they rendering their bill and closing the account in Dec., 1883; that after getting the notes, without her knowledge or consent or authority, they made a special contract with her husband, Albert Ford, by which they turned over to him one of the notes, and which without her knowledge, consent or authority he discounted to Mrs. Handy, losing on it $97.50, Mrs. Handy having no authority from her to buy up or discount the note. Albert Ford was to pay plaintiffs the amount of the note in monthly instalments, and in pursuance of this contract, has paid them $59.00, and until this litigation arose, was proceeding to pay them the balance. In

thus parting with the note, they converted it to their own use, and are bound to give her credit for the amount of it with interest. As to the balance due them, after the allowance of said credit, they should be required to get it out of Mrs. Handy on the other of the notes, for which a suit is now pending against Mrs. Handy as maker, and defendant as indorser, Mrs. Handy having refused to pay it because defendant would not convey to her 55 or 60 feet of land more than her bond for title calls for. Mrs. Handy is in possession of the house and lot for which the notes were given, and is solvent and well able to pay the note. Defendant also denied by plea that plaintiffs were entitled to a material-man's lien. She claimed that certain items in the account were incorrectly charged. She also pleaded that she is not and was not the owner of said house and lot, or house or lot, and had no title thereto, either before or at the time said lumber and materials were furnished, but that the house and lot, or land, upon which said lien is sought, belonged to Annie Ford, before and at the time said materials were furnished. The plaintiffs demurred on the grounds that defendant could not defeat the lien by showing title in a third party, and that she was estopped from denying ownership of the land. The demurrer was sustained.

One of plaintiffs testified that in 1883 and 1884, they sold and delivered to the defendant the materials set forth in the account. Albert Ford, her husband and agent, in Sept., 1883, brought to them two notes on Mrs. Handy, belonging to defendant and endorsed by her, each for $287.50, both dated Sept. 20, 1883, one due March 20, 1884, and the other Sept. 20, 1884, together with a deed signed and executed by defendant, conveying a certain house and lot on Pine street to Mrs. Handy, and stated that defendant wanted plaintiffs to

take the notes and escrow deed and let her have the
lumber and materials thereon. They agreed to take
and did take and keep the note due in March, 1884, and
the deed, and agreed to furnish and did furnish the ma-
terials thereon, and agreed to give defendant credit for
the amount of the note when collected, and deliver the
deed to Mrs. Handy. They refused to take the other
note, and returned it to defendant's agent. The amount
is correct, due and unpaid, except that it is entitled to
a credit of $287.50, the amount of the note they re-
ceived and which they have collected since this suit
began. The prices charged for the materials were rea-
sonable and agreed to by defendant, and the account
was due when the materials were furnished, and closed
in Feb., 1884. Defendant's agent, her husband, ordered
the materials, and these materials were sold and deliv-
ered to defendant, and from time to time as ordered by
her agent. Plaintiffs had nothing to do with the note
returned to said agent, and witness did not know what
said agent did with it.

The plaintiffs then introduced their claim of lien, re-
corded in the clerk's office of the superior court on
April 10, 1884. It set forth that plaintiffs, as material-
men, claimed a material-man's lien for $474.52 on the
house and premises, or real estate on which it was
built, of Eugenia C. Ford, for furnishing materials for
the improvement of said premises or real estate; then
followed a description of the lot of land; and it was
stated that upon the lot there was a two-story frame
house, and that the premises were known as No. 108
East Pine street. The defendant objected to this evi-
dence, on the grounds that it showed no compliance, on
the part of the plaintiffs, with their contract in regard
to the sale and delivery of the materials, and that it did
not allege defendant to be the owner of the house and
lot. These objections were overruled.

For the defendant, Albert Ford testified that the notes belonged to defendant and were given to her by Mrs. Handy, for a certain house and lot on Pine street; that defendant gave him both of the notes, which she had endorsed, and a deed, signed and executed by her, conveying the house and lot to Mrs. Handy, and told him to deliver them to plaintiffs and get the materials thereon; that the notes and deed were delivered to plaintiffs, they keeping the deed and one of the notes, due in March, 1884, agreeing to hold and collect this note, and when it was paid by Mrs. Handy to deliver her the deed, and to furnish defendant the materials set forth in the account; that they returned to witness the other note; and that the account with plaintiffs closed on Dec. 28, 1883. This testimony was corroborated by that of defendant, who further testified that plaintiffs rendered her a statement of the account in Dec., 1883.

The court then charged the jury, and purposely omitted to charge the law in regard to taking personal security by plaintiffs from defendant, and thereby destroying the lien which plaintiffs might otherwise have on the land, as material-men, holding that such a charge was inappropriate under the evidence. The jury returned a verdict in favor of plaintiffs for the amount sued for, less $287.50, and fixing a material-man's lien upon the house and lot described in the declaration and in the claim of lien, for the payment of same. Defendant, by bill of exceptions, alleged that the court erred in sustaining the demurrer to the plea above mentioned, in overruling her objections to the record of lien, in omitting to charge as above stated, and in holding that such a charge was inappropriate under the evidence; and that the verdict was contrary to law and evidence.

M. A. BELL, for plaintiff in error.

FRANK A. ARNOLD, contra.

v 85-8

BLECKLEY, Chief Justice.

1. The plea of the defendant, Mrs. Ford, that she was not the owner of the house and lot and had no title thereto, but that the same belonged to Annie Ford, was properly stricken on demurrer. Annie Ford was no party to this case, and her title or claim, whatever it may be, will not be affected by the judgment. Her interest may well be left to her own keeping. With respect to it, Mrs. Ford is a mere volunteer. She cannot be heard to set up the rights of Annie Ford in the premises upon which the lien is claimed. *Porter* v. *Wilder*, 62 *Ga.* 521.

2. The recorded claim of lien was properly admitted in evidence, the form and language of the claim being in substance as prescribed in section 1980 of the code. The objection that it did not show on its face a compliance by the plaintiffs with their contract in regard to the sale and delivery of the building materials, is answered by saying that no such requirement is made by the statute. Whilst the claimant of such a lien is required to show compliance with his contract in order to enforce his lien, the fact of compliance is not a matter which must appear on the face of the claim of lien as recorded. The objection that the defendant is not alleged in the claim to be the owner of the house and lot, is met by saying that the claim does so allege; the property being prescribed as the house and premises "of Eugenia C. Ford," this being followed by a full and particular description of the location and dimensions of the lot, specifying its number and the street on which it is situate.

3. The acceptance by the plaintiffs of the note of a third person (Mrs Handy) as collateral security for the price of the building materials furnished to defendant, constituted no waiver by the plaintiffs of their lien as

material-men; and the court did not err in omitting to submit to the jury any question as to such waiver. The amount of the collateral note was very much less than that of the plaintiff's account, and there is no trace in the evidence of any express waiver of lien, or of any agreement touching the existence or non-existence of such lien.   It may be that mechanics who have taken personal security thereby waive their lien (Code, §1979); but even this is not certain, for the last act on the subject (Acts of 1873, p. 42) says nothing of personal security. But it is certain that as to material-men there is no statutory intimation that they are not to have a lien as well when they take personal security as when they take none.   Their lien was first allowed by the act of 1872 (Acts of 1872, p. 47), which says nothing of personal security; and the act now in force as to them is that of 1873, *supra*, which also says nothing of personal security.   The doctrine which prevails in some States (see Kneeland on Mechanics' Liens, §§139, 139a), that a waiver of a statutory lien will result by implication from the acceptance of additional security, seems to us unsound.   A better view of the subject is that taken by Chief Justice Tilghman in Hinchman v. Lybrand, 14 Serg. & Rawle, 32; and by the Supreme Court of Alabama in Montandon v. Deas, 14 Ala. 33 (s. c. 48 Am. Dec. 84).   In the former of these cases there was a guarantor; and in the latter, notes of a third person were taken as collateral.   In both cases it was held that the lien was not waived.   This, we think, is the true law, though there is much authority having a contrary tendency.   See notes to Goble v. Gale, 41 Am. Dec. 221 *et seq.*   Our legislature having given material-men a lien in unqualified and unconditional terms, with no exception or reservation as to whether they take other security or not, we think it would be doing violence to the statute to engraft upon it a restriction

which the legislature either overlooked, or thought proper not to adopt. No doubt the lien can be waived, either by express contract or by acts equivalent thereto; but we are confident that no waiver results by implication from the mere acceptance of cumulative security.

4. Whether the verdict was right or wrong under the evidence submitted, is not for consideration upon the bill of exceptions before us, there being no motion made for a new trial. This point has been so frequently ruled, that it is rather surprising we have to deal with it over again at this late day.

*Judgment affirmed.*